IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

|  |  |  |
|---|---|---|
| SLS FRANCHISE SYSTEMS, LLC, | : | Case No: |
| 1790 Kirby Parkway | | Judge: |
| Memphis, TN 38138 | : | |
| | : | **COMPLAINT** |
| Plaintiff, | | |
| v. | : | |
| | | |
| STONE CREEK LAND DESIGN & | : | |
| DEVELOPMENT, INC., N/K/A STONE | | |
| CREEK LAND, INC. | : | |
| 5871 Hwy 2 | | |
| Priest River, ID 83856 | : | |
| | | |
| JOSHUA AND JANICE MARTIN | : | |
| 16913 N. Triple Butte Cir. | | |
| Colbert, WA  99005 | : | |
| | | |
| SCOTTS SPRAY SERVICE, LLC | : | |
| 4009 E. Francis | | |
| Spokane, WA 99217 | : | |
| | | |
| STONE CREEK LAND DESIGN & | : | |
| DEVELOPMENT, LLC | | |
| 4009 E. Francis | : | |
| Spokane, WA 99217 | | |
| | : | |
| and | | |
| | : | |
| ZEKE & MEGAN BROWN | : | |
| 1624 N. Heritage lane | | |
| Spokane, WA 99208-1624 | : | |
| | | |
| Defendants. | : | |

---

This is an action for declaratory judgment that Defendants Stone Creek Land, Inc. and

Joshua and Janice Martin (collectively "Martins") have breached their Franchise Agreement, as

amended, as well as other contracts and agreements between the parties and that these breaches constitute grounds to terminate the Franchise Agreement and related documents. Defendants Scotts Spray Service, LLC, Stone Creek Land Design & Development, LLC and Zeke and Megan Brown (collectively "Browns") have taken an unauthorized assignment of the Martins' franchise rights, have intentionally interfered with Plaintiff's contractual rights and have refused to honor its obligations under the terms of the Franchise Agreement. Plaintiff seeks monetary, injunctive and other relief against all Defendants for the reasons set forth below.

### THE PARTIES

1.　　　　Plaintiff SLS Franchise Systems, LLC ("SLS") is a Delaware limited liability corporation with its principal place of business in Memphis, Tennessee. It is engaged in the business of franchising independent business persons to operate Scotts® LawnService businesses throughout the United States. SLS franchisees are licensed to use trade names, service marks and trademarks owned by SLS and to operate under the Scotts® lawn care system which involves providing comprehensive lawn care services to residential and commercial customers such as fertilization, weed control, insect control, aeration and tree and shrub care services using a specifically designed system with special products, equipment, marketing systems, accessories, identification schemes, management programs, standards, specifications, proprietary marks and identification.

2.　　　　SLS was officially formed as a Delaware limited liability company in 2013 for the purpose of conducting the Scotts LawnService franchise operations. On November 25, 2013, EG Systems assigned and SLS assumed all Franchise Agreements and other contracts with franchisees and undertook all Scotts LawnService franchise-related operations.

3.      Currently, SLS's single Member is EG Systems, LLC, an Indiana corporation having its principal place of business in Tennessee.  EG Systems' single Member is TruGreen Limited Partnership, a Delaware limited partnership.  None of TruGreen Limited Partnership's general or limited partners are citizens or residents of Washington or Idaho.

4.      Stone Creek Land Design & Development, Inc., now known as Stone Creek Land, Inc. is an Idaho corporation with its principal place of business in Priest River, Idaho.

5.      Joshua and Janice Martin are residents and citizens of the State of Washington with their principal residential address in Spokane, Washington.

6.      Scotts Spray Service, LLC is a Washington limited liability corporation with its principal address in Colbert, Washington.

7.      Stone Creek Land Design & Development, LLC is a Washington limited liability corporation with its principal address in Spokane, Washington.

8.      Zeke and Megan Brown are citizens and residents of the State of Washington with their principal address in Spokane, Washington.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The amount of controversy exceeds $75,000, exclusive of costs and interest and is between citizens of different states.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims made herein occurred in this District. Furthermore, the parties agreed that any litigation or legal action relating to their contractual relationship shall be filed exclusively in the federal District Court for the Southern District of

Ohio. All parties with an interest in the Franchise Agreement consented to the jurisdiction of this Court.

11.     This Court has *in personam* jurisdiction over the Defendants because they have had ongoing and substantial contact with this District over the five-year history of the parties' relationship, including the ongoing payment of royalties and other fees to SLS and its predecessors in Ohio, the exchange of information, communications and documents with SLS in Ohio as well as the parties' consent to jurisdiction in this District as parties or assignees of the Franchise Agreement that forms the basis for this litigation. Defendants have conducted business in this District or engaged in actions and conduct described below that caused foreseeable harm and damage to SLS in this District and to that extent, the events giving rise to the claims occurred in this District.

## BACKGROUND FACTS

12.     SLS is the franchisor of the Scotts LawnService franchise system.

13.     SLS and its direct predecessors-in-interest are owners of the trademarks, service marks and trade names associated with the "Scotts®" lawn care system. SLS is also licensed to use the "Miracle-Gro® Tree & Shrub Care" mark in connection with tree and shrub care services. SLS has a license to use the Scotts® marks and the right to license others to use the "Miracle-Gro® Tree & Shrub Care" marks. These marks are well-known, famous and have significant value to SLS.

14.     SLS has the right to use and license others to use these registered trademarks and has the right to control their use.

15.     SLS has marked the goods and services provided under the marks with appropriate notice indicating that the marks are registered in the United States Patent and Trademark Office.

16.     An affidavit was filed in compliance with Articles 8 and 15 of the Trademark Act of 1946, as amended, for each of these marks, which have become incontestable under 28 U.S.C. § 1065.

## THE CONTRACTS BETWEEN THE PARTIES

17.     SLS has developed a business system for residential and commercial lawn care, tree and shrub care services and other related services using techniques, special equipment and processes, standards and specifications, products, and other methods (the "Business System"), all associated with the Scotts® and Miracle-Gro® trademarks, trade names and related marks.  SLS provides its unique services to the public through authorized franchisees who enter into franchise agreements with SLS.

18.     On or about November 15, 2011, the Martins entered into a Franchise Agreement with Plaintiff's predecessor to operate a Scotts LawnService franchise in specific zip codes in Washington and Idaho in what is considered the Spokane and Coeur d'Alene markets. A true and correct copy of the Franchise Assignment Agreement is attached hereto as Exhibit A.

19.     In association with the Franchise Agreement, the Martins also entered into Addenda to Scotts LawnService Franchise Agreement for Miracle-Gro Tree & Shrub Care Services, which authorized the Martins to operate a tree and shrub care business in association with their Scotts® LawnService business using the Miracle-Gro Tree & Shrub Care system as well and the "Miracle-Gro®" trademarks.   A true and correct copy of the Miracle-Gro Addendum is attached to the Franchise Agreement.

20.     At the time the Martins entered into the Scotts Franchise Agreement, they also executed a Sublicense Agreement for Real Green Software, a Scotts LawnService Website Listing Agreement and separate Agreements Not to Disclose confidential information.  True and correct copies of these documents are also attached to the Franchise Agreement.

## THE PARTIES' RIGHTS AND OBLIGATIONS UNDER THE FRANCHISE AGREEMENT, AS AMENDED

21.     The Martins were licensed to use the Scotts® and Miracle-Gro® trademarks in accordance with the terms of the Franchise Agreement and related Addenda.

22.     Under Article 11.2 of the Franchise Agreement, the Martins agreed to certain terms and conditions, including the following:

(a)     Not to sell, assign, transfer, pledge or encumber, by operation of law or otherwise, this Agreement, the Licensed Rights or the franchise granted hereunder or any ownership interest in Franchisee without the prior written consent of Scotts LawnService.  Such transfer, sale, assignment, pledge or encumbrance not having the written consent of Scotts LawnService shall be null and void and shall constitute a material breach of this Agreement, for which Scotts LawnService may then terminate this Agreement.

(b)     That in the event of an authorized transfer or assignment under paragraph 11 to 11.2 of the Franchise Agreement, Franchisor may require that the Martins execute a general lease in a form satisfactory to Franchisor; that the authorized transferee enter into a written assumption agreement assuming and agreeing to all the Franchisee's obligations under the Franchise Agreement; to replace or fully repair, refurbish and update the trucks, machinery, equipment and signs used in the Franchised Business; that that transferee meet educational and managerial standards; possess a good moral character, reputation and credit rating; that the authorized transferee execute a then-current standard form of Scotts LawnService Franchise Agreement; that the authorized transferee and its managers attend and complete the training course then in effect for new franchisees; and pay a transfer fee of $5,000.

23.     Under Article 11.4 of the Franchise Agreement, the Martins agreed that if at any time they decided to sell, transfer or assign any right or interest under the Franchise

Agreement or any ownership interest in the Franchisee corporation, partnership or other entity, that it shall submit an exact copy of such offer to Franchisor, which shall, for a period of 30 days after the date of delivery of such offer, have the right exercisable by written notice to Franchisee or its owners to purchase those rights or interests for the price and on the terms and conditions contained in the offer, provided that Franchisor may substitute equivalent cash for any form of payment proposed in such offer.

24.     Under Article 12.1 of the Franchise Agreement, the Martins agreed that the occurrence of any of the following events would constitute a default under the Franchise Agreement:

> (c)     If Franchisee misuses the Scotts LawnService System, the Licensed Rights, the Scotts Marks or the Marks or otherwise materially impairs the goodwill associated therewith or Scotts LawnService's rights therein;

> (f)     If Franchisee fails to operate the Franchised Business in compliance with the terms of the Franchise Agreement, the Operations Manual and any quality or operations standards and guidelines issued in writing by Scotts LawnService;

> (g)     If Franchisee fails to perform any provision of the Franchise Agreement or any other agreement to which Scotts LawnService and Franchisee are parties.

> (k)     Any attempted transfer in violation of Article 11 hereof.

> (u)     The failure by Franchisee to fully comply with the provisions of…Article 14 of this Agreement, or of the provisions of any amendment or addendum to this Agreement, providing Scotts LawnService with an option to purchase from Franchisee the rights of the Franchisee under this Agreement.

25.     Under Article 12.2 of the Franchise Agreement, the Martins agreed that upon the occurrence of any of the events set forth in Article 12.1(c), (f), (g) or (k), SLS may terminate the Franchise Agreement upon 30 days' written notice and failure to cure.

26.     Under Article 12.2 of the Franchise Agreements, the Martins agreed that upon the occurrence of any event set forth in Article 12.1(u), SLS may terminate the Franchise Agreement effective immediately upon written notice.

27.     Under Article 14 of the Franchise Agreement, as amended, SLS has the right to repurchase the Franchisee's franchise business upon the occurrence of a specified "Event." Such an Event was announced on December 10, 2015 and made effective April 13, 2016.

28.     By letter dated September 29, 2016, SLS gave the Martins notice pursuant to Article 14.2 of the Franchise Agreement that SLS was exercising its option to purchase certain assets and assume certain liabilities of Stone Creek Land, Inc. (the "Franchisee") in accordance with the terms of the Franchise Agreement. A true and correct copy of this Notice (without attachments) is attached hereto as Exhibit B.

29.     After SLS gave notice on September 29, 2016 of its exercise of its right to repurchase the Martins' franchise rights and franchise business under Article 14.2 of the Franchise Agreement, SLS learned, for the first time, that the Martins had entered into a series of transactions in 2014 and 2015 whereby the Martins transferred their interest in Stone Creek Land, Inc. to Scotts Spray Service, LLC and that Stone Creek Land Design & Development, LLC and the Browns acquired all of the stock of Scotts Spray Service, LLC. As a result, the Franchise Agreement and all of the assets relating to the franchise business were transferred by the Martins and Stone Creek Land, Inc. to the Browns and Stone Creek Land Design & Development, LLC.

30.     At no time during these transactions did the Martins or the Browns give SLS any notice of the transfer of the assets and ownership interest in the Franchisee or honor SLS's first right of refusal.

31.     The Martins' transfer of the assets and ownership of Stone Creek Land, Inc. to the Browns and Stone Creek Land Design & Development, LLC was without notice or approval by SLS and did not comply with any of the transfer and assignment provisions of Article 11 of the Franchise Agreement.

32.     After the Martins' transfer and assignment described herein took place, the Browns and Stone Creek Land Design & Development, LLC operated the Scotts LawnService franchise on a continuous basis without interruption and continues to operate that business today.

## BREACH OF THE FRANCHISE AGREEMENT

33.     The Martins and Browns have failed and refused to honor SLS's rights under Article 14 of the Franchise Agreement by refusing to proceed with a sale of the assets and the business to SLS under the specific terms of Article 14.2 of the Franchise Agreement and in accordance with SLS's Notice dated September 29, 2016.

34.     The Martins have breached the terms of Article 8.2 of the Franchise Agreement by disclosing confidential operations manuals to the Browns, who are unauthorized transferees.

35.     The Martins have breached Article 9.1 of the Franchise Agreement by disclosing Confidential Information to the Browns, who are unauthorized transferees.

36.     The Martins have breached Article 11.2 of the Franchise Agreement by selling, assigning, and transferring the Franchise Agreement, the licensed rights thereunder and the ownership of Stone Creek Land, Inc. to the Browns and Stone Creek Land Design & Development, LLC without prior written consent.

37.     The Martins have breached Article 11.4 of the Franchise Agreement by failing to honor SLS's right of first refusal upon the sale, transfer or assignment of their ownership

interest in Stone Creek Land, Inc. to the Browns and Stone Creek Land Design & Development, LLC.

38.     The Martins breached Article 17.10 of the Franchise Agreement by failing to make a timely written request for prior approval of the transfer and assignment of their ownership interest in Stone Creek Land, Inc. to the Browns and Stone Creek Land Design & Development, LLC.

39.     The Martins breached their individual and separate Agreements Not to Disclose confidential and proprietary information without SLS's prior written consent.

40.     As assignee of the Franchise Agreement and the assets and business of Stone Creek Land, Inc., the Browns and Stone Creek Land Design & Development, LLC breached Article 6.9 of the Franchise Agreement for failing to attend and complete initial training.

41.     As assignee of the Franchise Agreement and the assets and business of Stone Creek Land, Inc., the Browns and Stone Creek Land Design & Development, LLC breached Article 11.2(b)(4) of the Franchise Agreement for failing to enter into a written assumption of the franchisee's obligations under the Franchise Agreement or refurbish and update trucks, machinery, equipment and signs associated with the business.

42.     As assignee of the Franchise Agreement and the assets and business of Stone Creek Land, Inc., the Browns and Stone Creek Land Design & Development, LLC breached Article 11.2(b)(5) of the Franchise Agreement for failing to demonstrate educational, managerial standards, moral character, reputation and credit reading prior to the assignment and transfer.

43.     As assignee of the Franchise Agreement and the assets and business of Stone Creek Land, Inc., the Browns and Stone Creek Land Design & Development, LLC breached

Article 11.2(b)(6) of the Franchise Agreement for failing to execute the then-current standard Franchise Agreement upon transfer and assignment.

44.     As assignee of the Franchise Agreement and the assets and business of Stone Creek Land, Inc., the Browns and Stone Creek Land Design & Development, LLC breached Article 11.2(b)(8) of the Franchise Agreement for failing to pay the transfer fee of $5,000.

## POST-TERMINATION OBLIGATIONS

45.     Under Article 13.1 of the Franchise Agreement, the Martins and Browns agreed that upon termination of the Franchise Agreement, they would:

a.      Cease to operate its Franchised Business and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former Franchisee of Scotts LawnService;

b.      Immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, materials, confidential methods, procedures and techniques associated with the Scotts LawnService System;

d.      Turn over to Scotts LawnService all manuals, including the Operations Manual, the software sublicensed, if any, to Franchisee by Scotts LawnService, customer records in all forms and media, computer files, records, files, instructions, correspondence, and materials including, without limitation, brochures, agreements, disclosure statements and any and all other materials relating to the Franchised Business operated hereunder in Franchisee's possession including all copies thereof (all of which are hereby acknowledged to be Scotts LawnService's sole property and on loan to Franchisee during the term of this Agreement);

e.      Assign to Scotts LawnService all of Franchisee's telephone numbers and classified listings and advertisements used in the operation of the Franchised Business;

g.      Comply with all other obligations upon termination set forth in this Agreement.

46.     Under Article 13.2 of the Franchise Agreement, the Martins and Browns agreed that SLS shall have 30 days following the termination of the Franchise Agreement to

purchase the assets used in the franchise business pursuant to the methodology set forth in Article 13.

47.     Under Article 13.3 of the Franchise Agreement, the Martins and Browns agreed that for a period of three years following the termination of the Franchise Agreement they would not engage in any business involving the provision or sale of lawn care services or any business competitive or substantially competitive with, or similar to, the business of the nature and type described in the Franchise Agreement within the designated territory or within the territory of any other Scotts® LawnService franchise or Scotts® LawnService business.  This provision is applicable to the Martins and Browns as well as any officer, director, shareholder or holder of an ownership interest in the franchise business.

48.     Under Article 15.1 of the Franchise Agreement, the Martins and Browns agreed that SLS is entitled, without bond, to entry of temporary and permanent injunctive orders enforcing the provisions of the Franchise Agreement relating to the Martins and Browns' obligations upon termination of the Franchise Agreement, including the noncompete obligations.

49.     Under Article 15.3 of the Franchise Agreement, the Martins and Browns agreed that SLS would be entitled to recover its expenses, including attorneys' fees and disbursements, accounting fees and disbursements, court costs and costs of collection in the event it is a prevailing party in any dispute that arises under the Franchise Agreement.

## NOTICE OF DEFAULT

50.     Pursuant to the applicable provisions of the Franchise Agreement, as amended, on January 12, 2017, SLS sent the Martins and Browns a Notice of Default identifying the specific defaults, giving the Martins and Browns an opportunity to cure the defaults if they

believed they could do so.  The Notice also informed the Martins and Browns that SLS would be filing this action.

## COUNT I:     EQUITABLE ESTOPPEL

51.     The allegations in paragraphs 1 – 50 are hereby incorporated herein by reference.

52.     Notwithstanding the unauthorized transfer of the Franchise Agreement, the Browns and Stone Creek Land Design & Development, LLC have for over one year retained and accepted the benefits of operating under the terms of the Franchise Agreement.

53.     By retaining Joshua Martin as an employee and General Manager of the franchise location, the Browns and Stone Creek Land Design & Development, LLC were able to conceal from SLS the fact that they had taken an unauthorized assignment of the franchise rights and business assets without SLS's knowledge or approval.

54.     Notwithstanding the unauthorized transfer of the Franchise Agreement, the Martins and Browns' conduct and the circumstances alleged herein show intent to operate and be bound by the terms of the Franchise Agreement after the date of transfer.

55.     In obtaining and keeping the benefits of the Franchise Agreement after the unauthorized transfer without abiding by or honoring SLS's rights under Articles 13.2 or 14.2 of the Franchise Agreement, Defendants have been unjustly enriched.

56.     Notwithstanding the unauthorized transfer of the Franchise Agreement, pursuant to the conduct of the parties and circumstances alleged herein, benefits were conferred upon Defendants by SLS, Defendants appreciated such benefits, and Defendants accepted such benefits under circumstances which would make it inequitable for Defendants to retain the benefits without performing and honoring their obligations under the Franchise Agreement.

57.     Defendants are equitably estopped from asserting that the Franchise Agreement does not bind them to the obligations thereunder, including the obligation to honor SLS's rights under Article 14.2.

58.     Defendants are equitably estopped from denying SLS's legitimate and timely exercise of its right under Article 14.2 of the Franchise Agreement to purchase the Defendants' franchise business, which rights SLS timely exercised on September 29, 2016.

59.     SLS is entitled to an order of this Court equitably estopping Defendants from denying the existence and enforceability of the Franchise Agreement and declaring that SLS has the right to purchase the franchise business in accordance with the terms set forth in Article 14.2 of the Franchise Agreement.

## COUNT II:    BREACH OF CONTRACT

60.     The allegations in paragraphs 1 – 59 are hereby incorporated herein by reference.

61.     Defendants' conduct described above constitutes multiple breaches of the identified contractual provisions of the Franchise Agreement.

62.     As a result of Defendants' breaches, SLS has suffered and will continue to suffer injury and monetary damage in an amount that is yet to be determined, but believed to exceed $500,000 dollars.

63.     SLS requests that the Court enter judgment against Defendants, jointly and severally, for damages in excess of $500,000 for their breach of the Franchise Agreement, and Addenda.

## COUNT III:  DECLARATORY JUDGMENT

64.     The allegations in paragraphs 1 – 63 are hereby incorporated herein by reference.

65.     An actual controversy exists between the parties regarding whether grounds exist to terminate the Franchise Agreement and Addenda thereto.

66.     The controversy is of sufficient immediacy to warrant the issuance of declaratory relief.

67.     Considerations of practicality and wise judicial administration favor declaratory relief.

68.     Declaratory relief will serve a useful purpose in clarifying the parties' legal rights and responsibilities under the contracts between the parties and will settle the controversy raised herein.

69.     No better or more effective alternative remedy exists.

70.     SLS requests that the Court issue a declaratory judgment that Defendants committed the conduct described above and that such conduct constitutes multiple breaches of the Franchise Agreement and Addenda and that these breaches constitute grounds for terminating the Franchise Agreement and Addenda.

## COUNT IV:  POST-TERMINATION OBLIGATIONS

71.     The allegations in paragraphs 1 – 70 are hereby incorporated herein by reference.

72.     As set forth above, SLS seeks a Declaration that the Franchise Agreement between the parties is properly terminated.  Article 13 of the Franchise Agreement specifies Defendants' obligations after termination.

73.     Upon declaration by the Court that the Franchise Agreement have been properly terminated, SLS requests that the Court enter a permanent injunction enforcing all post-termination obligations in Article 13 of the Franchise Agreement, as set forth above, including SLS's purchase option upon termination set forth in Article 13.2.

74.     Absent injunctive relief, SLS will suffer irreparable harm and damage and impairment of the goodwill associated with its names and trademarks in the Spokane market.

75.     Absent injunctive relief, SLS has no adequate remedy of law to protect its substantial business and property rights and the damages from Defendants' failure to comply with all post-termination obligations is considerable and continuing and not capable of ascertainment.

76.     SLS is entitled to permanent injunctive relief enforcing all post-termination obligations in Article 13 of the Franchise Agreement and Addenda.

**COUNT V:   POST-TERMINATION OBLIGATIONS - NONCOMPETE**

77.     The allegations in paragraphs 1 – 76 are hereby incorporated herein by reference.

78.     Pursuant to Article 13.3 of the Franchise Agreement, Defendants agreed to refrain from competing with SLS and its other franchisees upon termination of their franchise rights.  Specifically, Article 13.3 requires that:

> **Covenant Not to Compete:**  For a period of three (3) years following the termination or expiration of this Agreement, whether by lapse of time or by other cause, sale and/or assignment of the Scotts LawnService franchise granted hereunder or the Franchised Business or by purchase by Scotts LawnService of all or substantially all of the assets of Franchisee pursuant hereto, Franchisee shall not, directly or indirectly, either as a principal, agent, employee, officer, or director of any corporation, as a partner, sole proprietor, or in any other way engage in any business involving the provision or sale of Lawn Care Services or any business competitive or substantially competitive with, or similar to, the business of the nature and type described under this Agreement within the

Franchised Area or within the Franchised Areas of any other Scotts LawnService franchisees or within the market areas of any Scotts LawnService Businesses owned and operated by EG Systems, Inc. For the purpose of this Article 13.3 and Article 6.16 of this Agreement, the term "Franchisee" shall include any officer, director, shareholder or holder of an ownership interest in Franchisee, if Franchisee is a corporation or other entity, and any partner of Franchisee, if Franchisee is a partnership.

79.     SLS has a legitimate business interest in its valuable confidential business information, substantial business relationships with existing and prospective customers, and the goodwill associated with the Scotts® and Miracle-Gro® trademarks and trade names in the territory covered by the Franchise Agreement, as well as the specialized training provided to Defendants as part of SLS's confidential Business System.

80.     SLS has no adequate remedy at law to protect its substantial business and property rights. If Defendants are allowed to operate a competitive business after termination, the damage from their activities would be considerable and continuing and not capable of ascertainment.

81.     Absent injunctive relief, Defendants' activities in operating a directly competitive business in Defendants' former territory would cause irreparable harm and damage to SLS and its other franchisees in Washington and Idaho.

82.     The noncompete provisions in the Franchise Agreement are reasonable and necessary to protect SLS's legitimate business interests.

83.     Upon declaration of termination, SLS is entitled to a permanent injunction against Defendants enforcing the post-termination noncompete provisions in the Franchise Agreement.

## COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACT (THE BROWNS)

84.     The allegations in paragraphs 1 – 83 are hereby incorporated herein by reference.

85.     The Browns were aware of the existence and terms of the Franchise Agreement and Addendum between SLS and the Martins, as they form the basis of the relationship between the parties and as an unauthorized assignee, the Browns have ownership and control over both the former Franchisee, Stone Creek Land, Inc., n/k/a Scotts Spray Service, LLC, and the unauthorized assignee, Stone Creek Land Design & Development, LLC.

86.     The Browns were aware of the Franchisee's obligations contained in the Franchise Agreement and Addenda, including obligations to seek written approval before selling, assigning, purchasing or taking assignment of any interest in the Franchise Agreement or the Franchisee's assets, as well as SLS's right of first refusal under Article 13 and SLS's right to purchase the franchise business pursuant to Article 14.

87.     The Brown' tortiously interfered with SLS's contractual relationship with the Martins by taking an unauthorized assignment of the Franchise Agreement and franchise rights, as well as the assets of Stone Creek Land, Inc. n/k/a Scotts Spray Service, LLC without prior written approval, authority and without honoring SLS's rights under Articles 13 and 14 of the Franchise Agreement.

88.     The Browns' tortious interference with SLS's contractual rights was intentional and without justification.

89.     As a result of the Browns' tortious interference with SLS's contractual rights, SLS has been damaged and will continue to suffer damages as a result of the Browns' actions and conduct.

90.     SLS is entitled to damages against the Browns for their tortious interference with the contractual relationship between SLS and the Martins.

**WHEREFORE**, SLS respectfully requests this Court grant the following relief:

A.      Entry of a declaratory judgment that the Franchise Agreement is binding on all Defendants, that SLS timely exercised its rights to purchase the franchise business and that SLS is entitled to purchase the Defendants' franchise businesses pursuant to the specific terms of Article 14.2 of the Franchise Agreement.

B.      Entry of a declaratory judgment that Defendants committed the conduct described in the Complaint, that such conduct constitutes multiple breaches of the contractual provisions of the Franchise Agreement and Addenda and that those breaches constitute grounds for terminating the Franchise Agreement and Addenda;

C.      Enter judgment in favor of SLS for damages incurred as a result of Defendants' breaches of the Franchise Agreement and Addenda, including but not limited to its attorneys' fees and costs pursuant to the terms of the Franchise Agreement and Addenda;

D.      Enter judgment in favor of SLS and against Defendants, jointly and severally, for damages in excess of $500,000 for Defendants' breach of the Franchise Agreement and Addenda and other conduct alleged in the Complaint;

E.      Enter an injunctive order enforcing the termination of the Franchise Agreement and Addenda;

F.      Enter an injunctive order enforcing all post-termination obligations under the Franchise Agreement, including the post-termination noncompete obligations and SLS's purchase option; and

G.      Award Plaintiff such other relief as this Court may deem just and proper.

Dated:  January 12, 2017          Respectfully Submitted,


/s/ Erin E. Rhinehart
Erin E. Rhinehart (0078298)
     Trial Attorney
Stephen A. Weigand (0083573)
FARUKI IRELAND COX RHINEHART &
DUSING P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0300
Telecopier: (513) 632-0319
Email: erhinehart@ficlaw.com
       sweigand@ficlaw.com

Michael R. Gray (pro hac vice forthcoming)
GRAY, PLANT, MOOTY & BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3000
Telecopier: (612) 632-4444
Email: mike.gray@gpmlaw.com

Attorneys for Plaintiff
SLS Franchise Systems, LLC